IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. Z., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21 C 6759 |
| | ) | |
| MARTIN J. O'MALLEY, | ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Michael J. Z. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff first applied for DIB on May 9, 2013, alleging disability since March 22, 2012 due to left cubital tunnel, left shoulder impairment with arthroscopy, ulnar neuritis of the left hand, a history of ulcerative colitis, and a history of asthma. (R. 71, 73). Administrative law judge John K. Kraybill denied the claim on October 3, 2014, finding

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

that Plaintiff was capable of performing sedentary jobs available in significant numbers in the national economy.[2] (R. 71-82). Plaintiff did not appeal that decision but filed a new application for DIB on December 4, 2015, alleging disability from the same onset date due to complex regional pain syndrome ("CRPS"); left shoulder injury; left arm injury; sleep disturbance; swelling of the left wrist, fingers, and forearm; heat in the left arm; permanent numbness and tingling in the fingers of the left hand; dizziness and unsteadiness; poor left hand grip; and right leg numbness. (R. 195, 218).

Born in January 1973, Plaintiff was 39 years old as of the alleged disability onset date and 43 years old as of his June 30, 2016 date last insured ("DLI"), making him at all relevant times a younger individual. (R. 245); 20 C.F.R. § 404.1563(c). He has a high school diploma and spent approximately 12 years working in multiple warehouse positions from 1994 to March 2012. He also worked for 9 months as a rural mail carrier in 2006. (R. 39-42, 242, 308). On March 22, 2012, Plaintiff hit his left (non-dominant) elbow on a railing while at work. He then experienced shooting pain through his arm and shoulder as he lifted a 60-pound item. (R. 325, 344). Plaintiff was diagnosed with CRPS of the left arm and underwent several treatments including physical therapy, injections, a left ulnar nerve decompression, and a left subpectoral biceps tenodesis and subacromial decompression. These measures did not resolve the CRPS. A few months after the injury, the employer's workers' compensation insurance carrier placed Plaintiff for alternative work at the Salvation Army and a nursing home. (R. 650). These were unsuccessful work attempts and Plaintiff has not engaged in any other employment since the March 22, 2012 injury date.

---

[2] Plaintiff waived his right to personally appear and testify before administrative law judge Kraybill. (R. 71).

The Social Security Administration denied Plaintiff's application at all levels of review, and he appealed to the district court. On January 19, 2021, this Court reversed and remanded the case to the Commissioner for further proceedings, finding that the assigned administrative law judge ("ALJ") erred in rejecting the opinions from treating internist Anthony Fernandez, M.D., without explaining how the evidence of record led to that conclusion. (R. 1310-23). On February 12, 2021, the Appeals Council vacated the final decision of the Commissioner and remanded the case to a different ALJ "for further proceedings consistent with the order of the court." (R. 1326). The ALJ was instructed to "take any further action needed to complete the administrative record and issue a new decision." (*Id.*).

Since Plaintiff's date last insured ("DLI") expired before the date of the ALJ's prior decision, the ALJ was not required to conduct another hearing. (*Id.*). Nevertheless, the ALJ held a new hearing on June 4, 2021.[3] Plaintiff appeared with counsel and provided testimony along with vocational expert Thomas Gusloff (the "VE"). (R. 1255-75). On June 29, 2021, the ALJ found that from the March 22, 2012 alleged disability onset date through the June 30, 2016 DLI, Plaintiff's CRPS of the left (non-dominant) arm, history of left cubital tunnel syndrome, and left rotator cuff tendinopathy status post left shoulder surgery were severe impairments, but they never met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1230-33). After reviewing the medical and testimonial evidence in detail, the ALJ concluded that throughout the relevant period, Plaintiff retained the residual functional capacity ("RFC") to perform light work with: no lifting and carrying of more than 10 pounds; sitting, standing, and walking

---

3   The hearing was held telephonically due to the COVID-19 pandemic.

for 6 hours or more in an 8-hour workday; occasional pushing and pulling of left arm controls; occasional reaching overhead and in all other directions with the left arm; no climbing of ladders, ropes, or scaffolds; no work around unprotected heights, open flames, or unprotected dangerous moving machinery; occasional handling and fingering with the left arm; and occasional crawling. Plaintiff could tolerate concentrated exposure to: dusts; fumes; gases; poor ventilation; and extremes of cold, heat, or vibrations. (R. 1233-43).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and this RFC could perform jobs available in significant numbers in the national economy, including Investigator Dealer Accounts or School Bus Monitor. (R. 1243-45). As a result, the ALJ found that Plaintiff was not disabled at any time from the March 22, 2012 alleged onset date through the June 30, 2016 DLI. (R. 1245). The Appeals Council denied Plaintiff's request for review (R. 1224-26), leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In support of his request for reversal or remand, Plaintiff once again argues that the ALJ erred in rejecting the opinions of his treating internist Dr. Anthony Fernandez. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## **DISCUSSION**

### A.     **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ

5

must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.      Analysis**

As noted, Plaintiff argues that the case must be reversed or remanded because the ALJ did not provide valid reasons for affording only some weight to the opinions from his treating family physician Dr. Anthony Fernandez. (Doc. 12, at 6). A treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); see *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). If the opinion is contradicted by other evidence or is internally inconsistent, the ALJ may discount it so long as she provides an adequate explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). That is to say, the ALJ must offer "good reasons" for discounting a treating physician's opinion, *Scott*, 647 F.3d at 739, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention

6

of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); see *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).[4]

Dr. Fernandez treated Plaintiff from at least March 22, 2012 to March 2018 and provided several opinions indicating that Plaintiff had severe physical and mental restrictions during that period. On September 5, 2013, Dr. Fernandez opined that due to Plaintiff's CRPS, he could never lift or carry objects with his left hand, never reach with the left arm (including above the shoulder, at waist level, or below waist level), and never finger or handle with his left hand. (R. 793). On April 8, 2016, Dr. Fernandez submitted a written narrative describing Plaintiff's treatment history and struggles with CRPS of the left arm. (R. 622-23). He opined that Plaintiff was unable to lift/carry more than 5 pounds and could not do so repeatedly. The pain interfered with Plaintiff's sleep, and his narcotic medications exacerbated his fatigue and caused difficulties with processing and remembering information. As a result, Dr. Fernandez stated that Plaintiff "cannot tolerate a full work day or week." (R. 623).

In a physical RFC assessment completed shortly thereafter on April 14, 2016, Dr. Fernandez reiterated that Plaintiff suffered from severe left hand pain and weakness, mental confusion, and fatigue due to his CRPS. (R. 624). According to Dr. Fernandez, Plaintiff still could only occasionally lift and carry less than 5 pounds and never lift and carry more than that. (R. 624-25). In addition, Plaintiff could not walk even one city block without rest or severe pain, could only sit for one hour at a time, and could stand and walk for less than one hour in an 8-hour workday. (R. 625). Due to the pain and resulting

---

[4] Since Plaintiff filed his application for DIB in May 2013, the new framework for evaluating treating source opinions that went into effect on March 27, 2017 does not apply. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (the treating physician rule governs claims filed before March 27, 2017).

7

fatigue, Plaintiff needed to lie down for 2-3 hours per 8-hour workday, lie down for 2 hours at a time before changing position, and take unscheduled breaks 2-3 times per day lasting 60 minutes. (R. 625-26). According to Dr. Fernandez, pain and stress would constantly interfere with Plaintiff's ability to sustain attention and concentration needed to perform simple work tasks throughout the day. (R. 626). And as a result of difficulties with memory lapses, Plaintiff would be off task 30% of the workday; would be absent from work 5 days or more per month; and would be unable to complete an 8-hour workday 5 days or more per month. (R. 626-27). Dr. Fernandez largely repeated these findings on November 6, 2017, more than a year after Plaintiff's June 30, 2016 DLI. (R. 760-62).

In affording Dr. Fernandez's opinions only some weight, the ALJ explained that the objective evidence did not support his extreme limitations. For example, Dr. Fernandez indicated that Plaintiff suffered from intractable pain that rendered him essentially incapable of sitting, standing, and walking, and experienced confusion and grogginess from narcotic medication and gabapentin that would seriously impact his ability to work full-time. But during numerous appointments between December 2012 and February 2016, Plaintiff was never observed to be in acute/apparent distress or discomfort and was fully alert and oriented even when the exams included touching the left arm. (R. 437, 443, 459, 474, 559, 589, 599, 601, 797-98, 802, 806, 810, 815, 819, 962, 1054, 1167, 1170, 1176, 1235-38, 1240-41). In addition, though Dr. Fernandez stated that Plaintiff could barely use his left arm, Plaintiff routinely presented with full or nearly full strength, "suggesting no significant weakness." (R. 359, 443, 459, 549, 554, 559, 589, 595, 602, 724, 798, 806, 825, 884, 923, 1238). *See Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th

8

Cir. 2021)) (ALJ properly discounted treating physician's statement that was "inconsistent with other objective evidence in the record.").

Plaintiff responds that it is not unusual for there to be conflicting evidence in the record "due to the transitory nature of [CRPS's] objective findings," and that symptoms "may be present at one examination and not appear at another." (Doc. 21, at 11) (quoting SSR 03-2p, 2003 WL 22814447, at *4). The ALJ specifically discussed these unique features of CRPS and acknowledged that Plaintiff often presented with edema and sensitivity or tenderness to light touch on exam, along with slightly reduced grip strength on occasion. (R. 395, 401, 412, 418, 680, 706, 712, 716, 755, 834, 836, 849, 856, 935, 950, 966, 975, 978, 980, 983, 985, 991, 1006, 1188, 1232, 1240, 1241). The ALJ nevertheless found that Plaintiff's complaints of debilitating pain, fatigue, and lack of concentration, and the extreme limitations imposed by Dr. Fernandez, were inconsistent with Plaintiff's level of functioning. (R. 1241).

The ALJ noted, for example, that Plaintiff never reported any difficulties with his activities of daily living and was able to regularly drive his daughter to school, attend swim meets, go on a 7-day cruise and get off at private beaches, and travel to a Disney theme park. (*Id.*). There were also surveillance photos/videos from spring 2015 showing Plaintiff lifting a beach chair and, on multiple occasions, holding keys in his left hand with the elbow bent to 90 degrees and then driving his car. (R. 1237, 1238); *Carolyn R. v. Kijakazi*, No. 22 C 1519, 2023 WL 5748198, at *6 (N.D. Ill. Sept. 6, 2023) ("An ALJ may properly consider a claimant's own reports regarding her activities of daily living when determining the weight to assign a treating physician's opinion."); *Ortega v. Berryhill*, No. 17 C 2527, 2018 WL 4144636, at *5 (N.D. Ill. Aug. 30, 2018) (ALJ did not err in discounting plaintiff's

9

subjective complaints based in part on his ability to travel). The ALJ reasonably concluded that this evidence undermined Dr. Fernandez's opinion that Plaintiff could not walk a single block, could barely focus, and struggled to use his arm in any way.

Contrary to Plaintiff's suggestion, the ALJ did not err by improperly equating his ability to engage in these activities with an ability work; she merely concluded that they reflected greater functioning than Plaintiff and Dr. Fernandez indicated. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (no error where the ALJ used the plaintiff's reported activities to assess the credibility of her statements concerning the intensity, persistence, and limiting effects of her symptoms). The ALJ also satisfied her obligation to consider Plaintiff's limitations in performing these activities, such as needing to lie down after attending a swim meet and being unable to do any walking in the ports of call during the cruise. (R. 1234, 1241); *Gwendolyn P. v. Kijakazi*, No. 20 C 3339, 2021 WL 5204858, at *4 (N.D. Ill. Nov. 9, 2021) (ALJ properly analyzed the plaintiff's daily activities in the light of the limitations she described); *Moss v. Astrue*, 555 F.3d 556, 563 (7th Cir. 2009). Plaintiff takes issue with the ALJ's personal observations regarding the size of modern cruise ships and the amount of walking required. (Doc. 21, at 9-10; Doc. 24, at 3-4). But Plaintiff does not offer any contrary information about his ship and, in any event, this was just one factor that the ALJ considered in discounting the extreme limitations found in Dr. Fernandez's opinions.

Plaintiff stresses that Dr. Fernandez knew about all of his activities and "did not say he doubted the existence of any of these problems [with sleepiness, drowsiness, and concentration] when he wrote about them." (Doc. 21, at 12; Doc. 24, at 5) (citing R. 679, 754, 983). That is not entirely true, as Dr. Fernandez declined to comment on the

10

activities shown on the surveillance videos. (R. 696, 1237) (when peer reviewer Stuart A. Rubin, M.D., asked about the surveillance pictures, Dr. Fernandez "had no opinion."). In addition, Dr. Fernandez never documented that Plaintiff appeared tired or groggy during appointments, or exhibited any cognitive deficits from his medications or otherwise. (R. 1241). Plaintiff insists he complained about problems in these areas but cites only two records: one is from October 27, 2017, long after the June 30, 2016 DLI (R. 754), and the other merely indicated that Plaintiff said he was tired in November 2012. (R. 983). In any event, the ALJ was not required to accept Dr. Fernandez's stated restrictions to the extent they were based only on Plaintiff's subjective statements. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints.").

Plaintiff next argues that the ALJ gave flawed reasons for rejecting Dr. Fernandez's standing and walking limitations. More specifically, the ALJ stated that there was no medically determinable impairment that would reasonably cause gait disturbances or difficulties with the functional maneuvers associated with those activities, and questioned how reclining would alleviate arm pain. (R. 1241). Plaintiff says this was error because Dr. Fernandez attributed the exertional limitations to a lack of stamina and fatigue resulting from the pain of CRPS. (Doc. 21, at 10-11) (R. 762). Even assuming it was improper to consider the absence of anatomical abnormalities, any error was harmless. The ALJ conceded that pain can cause fatigue but reasonably concluded that Dr. Fernandez relied too heavily on Plaintiff's subjective allegations, which the ALJ found inconsistent with other record evidence. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir.

11

2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'"). For similar reasons, the ALJ did not commit reversible error by noting Plaintiff's testimony that he had greater functioning in 2018 (already nearly two years after the DLI) than in 2021. (R. 1242, 1265).

Finally, the ALJ properly considered that Dr. Fernandez was not a specialist in an area typically familiar with CRPS, such as neurology, physiatry, occupational medicine, or pain management. (R. 1240). *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (under 20 C.F.R. § 404.1527(c), an ALJ is to consider whether the physician specializes in the medical conditions at issue). Plaintiff objects that it was "nonsensical" for the ALJ to discount Dr. Fernandez's opinions while crediting an opinion from Mark Levin, M.D., who is an orthopedist. (Doc. 21, at 13; Doc. 24, at 6). In fact, the ALJ gave the opinions from both physicians "some weight," explaining the portions she accepted and those she found unpersuasive. (R. 1239, 1240). The ALJ also fairly explained that the opinion from physiatrist Stuart Rubin, M.D., was entitled to limited weight because he never examined Plaintiff and relied primarily on notes from, and a telephone conversation he had with, Dr. Fernandez. This was entirely within the ALJ's purview. *See Hapner v. Saul*, 818 F. App'x 552, 553 (7th Cir. 2020) (it is up to the ALJ to "weigh the conflicting medical opinions."). And in light of the available evidence, the ALJ did not err in failing to recontact Dr. Fernandez for further information. *See Palmer v. Saul*, 779 F. App'x 394, 398 (7th Cir. 2019) (ALJ need not recontact a medical source if the ALJ believes sufficient evidence exists to reach a conclusion).

Plaintiff suggests that Dr. Fernandez's opinions warrant particular deference because the regulations governing CRPS contemplate that medical opinions from treating sources are "extremely helpful in documenting the presence of any medical signs, symptoms and laboratory findings," and are "entitled to deference and may be entitled to controlling weight." SSR 03-2p, 2003 WL 22399117, at *5. As always, however, the opinions must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in the case record." *Id.* Here, the ALJ considered and discussed all of the opinions of record as required and explained the weight afforded to each. *Schmidt*, 496 F.3d at 845 (an ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."). Plaintiff may disagree with the outcome but the Court will not reweigh evidence or substitute its judgment for the ALJ's. *Gedatus*, 994 F.3d at 900; *Jeske v. Saul,* 955 F.3d 583, 592 (7th Cir. 2020) (it is the ALJ's responsibility to decide the facts and resolve discrepancies in the record).

"[C]ourts will uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Rodolfo G. v. Kijakazi*, No. 19 C 3937, 2022 WL 507589, at *7 (N.D. Ill. Feb. 18, 2022) (quoting *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015)). Viewing the record as a whole, the ALJ provided good reasons for rejecting the extreme limitations set forth in Dr. Fernandez's opinions, and that decision is supported by substantial evidence. *Robert S. v. Kijakazi*, No. 20 C 6286, 2022 WL 45036, at *4 (N.D. Ill. Jan. 5, 2022) ("The substantial evidence standard is a low hurdle to negotiate."). Even if reasonable minds could differ, Plaintiff cannot establish reversible error simply because "the ALJ 'weighed the evidence in a different way than Plaintiff would

13

have liked.'" *Jessica K. v. Saul*, No. 19 C 4380, 2020 WL 4015330, at *7 (N.D. Ill. July 16, 2020) (quoting *Bertha M. v. Saul*, 395 F. Supp. 3d 963, 972 (N.D. Ill. Sept. 17, 2019)).

## **CONCLUSION**

For the reasons stated above, Plaintiff's request to reverse or remand the ALJ's decision is denied, and the Commissioner's motion for summary judgment [22] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: September 19, 2024

_____
SHEILA FINNEGAN
United States Magistrate Judge

14